Fidelity Ins. Trust & Safe Deposit Co., Adm. of John G. Reading, Appellant, *v.* Jos. M. Gazzam.

*Equity—Jurisdiction—Setting aside power of attorney—Res adjudicata —Account—Executors.*

The fact that the account of an executor has been confirmed by the orphans' court, will not prevent the administrator d. b. n. c. t. a. of the testator from filing a bill in equity in the court of common pleas to set aside a power of attorney given by the testator to the executor, and to compel the executor to account for moneys alleged to have been fraudulently appropriated to his own use while acting as attorney in fact for the decedent in the latter's lifetime.

Argued Jan. 23, 1894. Appeal, No. 154, July T., 1893, by plaintiff, from decree of C. P. No. 4, Phila. Co., March T., 1893, No. 72, dismissing bill in equity against defendant. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. Reversed.

Bill in equity to set aside power of attorney and for an account.

The bill averred that defendant, while acting with unusual and general powers as attorney in fact of John G. Reading, had taken advantage of the confidence reposed in him, while the latter was enfeebled and in a virtually senile condition, by procuring an agreement which gave him all the income of the estate in excess of an allowance, thereout, to Reading of $50,000 per annum; that under this agreement defendant had appropriated to himself during the two years and a half which elapsed between its execution and the death of Reading the sum of $184,489.52, or thereabouts; and that under his said general power of attorney, defendant made reckless, improper and im-

provident investments, which had entailed an additional loss of upwards of $300,000. The bill prayed that the letter of attorney should be surrendered for cancellation ; that the agreement should be declared fraudulent and should be surrendered for cancellation ; that an account should be stated of the income, which, under said agreement, had been appropriated by defendant to his own use; that the amount which had been thus appropriated should be decreed to be paid to the complainant; that a master should state an account of the transactions of defendant under said letter of attorney ; and that any balance which should be found due under such accounting should be paid to the complainant.

The plea made protestation against acknowledgment of correctness of bill ; admitted the death of testator, John G. Reading, leaving a will " and a codicil thereto, bearing date Nov. 8, 1888, more than eight months after the date of the letter of attorney, and nearly two months and a half after the agreement;" admitted probate of will and letters testamentary to defendant " as well on said codicil as on said will." The rights and credits of testator, especially his claims against defendant as his agent or otherwise, in the bill mentioned or otherwise, thus became assets in defendant's hands, and it was his duty to settle and adjust all unliquidated demands and accounts, and to collect all debts, claims, and demands, and especially to take and hold as executor all moneys which he ought to pay as agent or attorney, or otherwise. He therefore adjusted his accounts, claims, and demands with testator at and immediately before the time of his death, and the moneys payable into his own hands as executor ; exhibited and filed an inventory, and included therein all securities purchased or procured by him for testator as " agent or attorney or otherwise," and did also include as cash in his possession the balance due and payable by him on the adjustment of the accounts between himself individually and the testator and himself as executor.

The plea then set forth the filing of defendant's account and the audit and adjudication thereon, and called attention to the fact that the account shows the payment of legacies, given both by codicil and will, to the extent of $917,405, including $25,000 paid to himself, being one half of a legacy of $50,000 given him by the will. The adjudication set forth his desire to be

discharged from the executorship, awarded him additional commissions, and specifically found the amount of the estate and the securities of which it is composed, " which will go over to his successor in office." The adjudication was confirmed.

Defendant applied for his discharge. His petition set forth the unpaid legacies and the amount of the estate. Notice was " duly given of said application." The court made a decree discharging him, upon his transferring and paying over the entire estate to his successor and the final confirmation of the adjudication. The plea referred to and annexed a copy of the entire record, including the notice of his application to be discharged and the receipt from appellant.

The plea averred that said decrees were not procured by or through fraud, covin, or concealment. Testator's failing health (exaggerated by the bill both as to extent and time) was well known to relations and friends and all those interested in his residuary estate. The existence of the letter of attorney and agreement was also known. Testator's daughter, Mary Anna, mentioned in the will, is the A. R. Gazzam, subscribing witness to the agreement, " and she well knew the contents thereof." George Junkin, Esq., and J. B. Townsend, Esq., were counsel for Mrs. Gazzam and the Philadelphia Trust etc. Company, trustees under the will, and defendant's books, papers, and accounts, not only as executor, but also as agent and attorney prior to Mr. Reading's death, " were freely and fully exhibited to said counsel and especially to Mr. Townsend." The question of responsibility for certain losses was discussed. John G. Reading, Jr., Esq., a remainder-man and counsel for a majority of the remainder-men, was also acquainted with the circumstances. Domestic differences had already arisen between defendant and his wife, and he determined to free himself from her business affairs. He procured his discharge and paid over the assets, relying on the adjudication and the ascertainment of the amount of the estate in his hands, and pleaded the proceedings, and prayed judgment whether he should answer.

From the records of the orphans' court, which were made part of the plea, it was established that the inventory and the first and supplemental accounts which were filed, set forth the securities and personal property of the decedent, including the investments made by defendant while he was agent or attorney

for the said John G. Reading, deceased. That the first account was duly advertised Dec. 28, 1891, as " the account of his administration " of the estate of John G. Reading, deceased ; that the estate was called for final audit July 7, 1892; that the continuation of the audit from Jan. 4, 1892, to July 7, 1892, was by agreement of counsel, and that the adjournment was for the purpose of filing a supplemental account to come up with the account originally filed. That at the adjudication on July 7, 1892, the principal legatees were represented by counsel. The supplemental account was filed July 7, 1892. That in the application by appellee for his discharge as executor, presented on July 16th, and pending the adjudication, the petition for which sets out fully the condition of the estate, all of the principal legatees acknowledged in writing upon said petition that they had received notice of the same, and consented to the granting of the prayer thereof, which legatees included Mary Anna Gazzam and the trustees of the residuary estate, and of the trust estate of Mary Anna Gazzam, and said petition, by affidavit appended, showed that all other legatees had received due notice that said application would be made.

It further appeared that defendant asked for credit upon a list of securities which had been appraised at no value, or which had become valueless since the appraisement, which credit was allowed, and that the account as originally filed, and the supplemental account, which at the hearing was brought in before the court, " there being no objection thereto, were found to be correct."

The cause was heard upon bill and plea. The court sustained the plea and dismissed the bill for want of jurisdiction, in an opinion by ARNOLD, J., 2 Dist. R. 569.

*Error assigned* was dismissal of bill.

*Richard C. Dale* and *John G. Johnson* for appellant.—The account which was filed in the office of the register of wills was called a " first account." As such it was filed, and as such it was advertised by the register. The orphans' court have no jurisdiction to deal with any executor's account, saving with one filed in the office of the register of wills, duly advertised, and sent to it for adjudication after such advertisement. Par-

ties interested in the estate were not bound to consider the ac count as being other than that which was asserted upon its face, viz., a partial one. They were at liberty, if they entertained any intention to show that matters had been omitted, to defer their attempts to surcharge until such time as a final account should be filed: Shindel's Ap., 57 Pa. 43; Acts of March 15, 1832, §§ 29, 30; March 29, 1832, §§ 15, 16, P. L. 193; June 16, 1836, § 19, P. L. 792; May 19, 1874, § 6, P. L. 207; March 18, 1875, § 1, P. L. 29.

If defendant still remained executor of this estate, without any petition for review, but merely under a citation that he should further account, issued in pursuance of a petition averring that there were matters of charge which had not been included in his first and supplemental accounts, he would be obliged to file a final account: Bower's Ap., 2 Pa. 434; Chambers's Ap., 11 Pa. 442.

Even if the account filed was a final one, the filing and confirmation thereof do not bar the relief claimed under the bill: Miller's Est., 136 Pa. 239; Griffith v. Chew, 8 S. & R. 32; Pusey v. Clemson, 9 S. & R. 208; Lisenbigler v. Gourley, 56 Pa. 166; Simon v. Albright, 12 S. & R. 429; Eichelberger v. Morris, 6 Watts, 42; Beckley's Ap., 3 Pa. 425; Act of Feb. 24, 1834, § 6, P. L. 73.

A plea of res adjudicata will not be sustained when there has not been a real determination of the litigated question in the prior suit: Haviland v. Fidelity Co., 108 Pa. 236; Weigley v. Coffman, 144 Pa. 489.

*J. Levering Jones* and *J. Howard Gendell, William S. Wallace* with them, for appellee.—The orphans' court has exclusive jurisdiction of all claims against an executor, which were vested in his testator, at and immediately before the time of his death, or which in any way arose in favor of the legatees, or estate, by his dealing with his testator, in his lifetime, or with the estate during his executorship: Eichelberger v. Morris, 6 Watts, 42; Simon v. Albright, 12 S. & R. 428; Griffith v. Chew, 8 S. & R. 17; Pusey v. Clemson, 9 S. & R. 204; Beckley's Ap., 3 Pa. 425; 2 Bl. Com. 511; Linsenbigler v. Gourley, 56 Pa. 166; Bowman's Ap., 62 Pa. 166; 2 Wms. Exrs. *1180–5; Hammett's Ap., 83 Pa. 394; Otterson v. Gallagher, 88 Pa. 355.

The jurisdiction of the orphans' court has neither been lost nor transferred to the common pleas by the settlement of the executor's accounts. If a proper cause of action can be made out, the executor can still be charged in the orphans' court, and the remedy there remains exclusive of the common pleas: Act of May 19, 1874, P. L. 207; Brooke's Ap., 102 Pa. 150; Odd Fellows Savings Bank's Ap., 123 Pa. 357; Marshall's Est., 138 Pa. 285; Miskimins's Ap., 114 Pa. 530; Mulholland's Est., 154 Pa. 491; Watts's Est., 158 Pa. 1; George's Ap., 12 Pa. 260; Milne's Ap., 99 Pa. 483; Young's Ap., 99 Pa. 74.

The action of the court below upon the merits of the cause was the only conclusion that justly could have been reached by looking at all the facts appearing—not in the bill alone— but in the bill and plea together, including the records of the orphans' court forming part of the plea.

In Rhoads's Ap., 39 Pa. 186, the court considered carefully the effect of certain legislation, and held that the former distinction between partial and final accounts is now at an end.

As to the adjudication of the accounts, taken alone, it is conclusive as to all matters raised (as these were, in substance), and also as to all matters that might have been raised: Helfenstein's Est., 135 Pa. 293. And on general principle, see Freeman on Judgments, 3d ed. § 178; Sm. L. Cas., 7th Am. ed. 789; Henderson v. Henderson, 3 Hare, 115; Beloit v. Morgan, 7 Wal. 619; Harman v. Auditor, 13 N. E. 161.

Opinion by Mr. Justice Mitchell, May 21, 1894:

The purpose of the bill is to set aside a written agreement on the ground that it was fraudulently procured by defendant while in a confidential position to a decedent of impaired strength. of mind, and, further, for an account of investments made and moneys collected and retained by defendant thereunder. This is a subject of general equity jurisdiction which resides in the common pleas, and not in the orphans' court. Under ordinary circumstances, therefore, the orphans' court would have no control over the money in the hands of the attorney in fact. But as the attorney was made also executor, it became his duty in this capacity to put into his account the balance in his hands as attorney, and only thereby did the orphans' court acquire any jurisdiction over that balance. To the extent that that

matter was passed upon by the orphans' court a plea of res adjudicata is a good defence. This however is not ground for a plea to the jurisdiction of the court, but goes only to the rights of the parties, and in no case would it sustain a dismissal of the bill for want of jurisdiction. Such dismissal was erroneous under any view of the facts.

To reach the real question in the case we must consider the exact extent of what was before the orphans' court, for it was dealing with a subject not within its general jurisdiction, but only brought within it by special circumstances, and to the extent made clearly necessary by those circumstances. That court was not the proper tribunal to order the surrender and cancellation of the agreement, and was in no wise prompted to the consideration of that subject. As a fact the attorney to account, and the executor to ask the accounting were the same person, and the latter's duty prima facie would appear to have been fulfilled by assuming that the agreement was valid, and receiving the balance becoming due on that assumption. That was all that was before the court, and that is the utmost extent of the conclusiveness of its decree.

On the other hand the gravamen of the present bill is the fraudulent character of the agreement, and the relief asked is to set it aside. That as already said is the subject of general equity jurisdiction, and belongs to the common pleas. The further relief by accounting for what was done under it is subordinate and incidental. Whether any such relief is to be given at all depends first and solely on the determination of the main question. If it is to be given, then the amount of it will depend on general principles applied to the evidence, and in such application the decree of the orphans' court and its extent as a conclusive settlement will receive due consideration.

It may well be that this unfortunate controversy is, as the learned court below seems to have viewed it, an afterthought growing out of the changed relations of the parties interested, but the matters charged in the bill have not been adjudicated, and are therefore before the court for determination.

Decree reversed, bill reinstated and record remitted for further proceedings in accordance with this opinion.